UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
 :
EUN K. PARK, individually and on behalf of all others :
similarly situated, : **19-cv-3621 (ARR) (ST)**
 :
                  Plaintiff, : **OPINION & ORDER**
 :
   -against- : **NOT FOR ELECTRONIC**
 : **OR PRINT PUBLICATION**
FORSTER & GARBUS, LLP, :
 :
                  Defendant. :
 :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

      Plaintiff Eun K. Park ("Park") alleges that a collection letter sent to him by defendant, Forster & Garbus, LLP ("F&G"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by failing to clearly notify him of his validation rights, as required by the statute. Compl. ¶¶ 35–163, ECF No. 1; *see* 15 USC §§ 1692g, 1692e, 1692e(10). Specifically, he alleges that although the text of the validation notice complies with the law, other aspects of F&G's collection letter ("collection letter") overshadow and contradict the validation notice. Compl. ¶¶ 65–70, 97–117, 135–53; *see* 15 U.S.C. § 1692g(b). Park also contends that the collection letter uses a "false, deceptive, or misleading representation or means" in an attempt to collect the debt, because it is "open to more than one reasonable interpretation, at least one of which is inaccurate." 15 U.S.C. § 1692e; Compl. ¶¶ 71–81, 121-23, 157–62.

      Asserting three causes of action, plaintiff contends that the letter 1) contains multiple addresses, creating confusion as to where a debtor should mail a written dispute

1

of the debt; 2) is structured to misdirect a debtor's attention away from the validation rights disclosure by deemphasizing that portion of the text and highlighting other portions of the collection letter; and 3) could intimidate a debtor such that he would not exercise his validation rights because F&G, a law firm, referenced a lawsuit in the letter. Compl. ¶¶ 35–163. Presently before the court is defendant's motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim. For the foregoing reasons, I grant defendant's motion and dismiss plaintiff's claims because the letter properly notifies consumers of their validation rights.

## BACKGROUND

On July 12, 2018, Forster & Garbus LLP sent a letter to Park seeking to collect a debt balance of $5,571.19. *See* Compl. Ex. 1 at 1, ECF No. 1-1 ("Collection Letter"). The second paragraph of the collection letter sets forth plaintiff's validation rights, as required by the FDCPA, stating:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office *in writing* within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office *in writing* within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*Id.* (emphasis added).

Plaintiff's first cause of action alleges that the collection letter is ambiguous as to which address a consumer should use to dispute his debt by mail, pursuant to his validation rights enumerated in paragraph two. Compl. ¶¶ 35–88. The collection letter's fourth

paragraph instructs Park to "mail all correspondence and payments to the address listed below." Collection Letter 1. Following this statement, two-thirds of the way down the front page, the collection letter reads "Office Location: 60 Motor Parkway • Commack, NY 11725-5710[.]" *Id.*[1] Directly below that address, the remaining portion of the collection letter is a detachable coupon, which the consumer may remove along a perforated line, emphasized with an instruction to "detach here." *Id.* Below the perforated line, the letter reads "MAKE CHECK PAYABLE TO: ***FORSTER & GARBUS LLP as attorneys*** AND RETURN COUPON WITH PAYMENT TO PO BOX 9030, Commack, NY 11725-9030 IN[.]" *Id.* On the bottom-right corner of the coupon, an arrow points to the same P.O. Box address. *Id.* To its left, the plaintiff's name and address is listed. *Id.* Plaintiff claims that a consumer's confusion as to which of the listed addresses he should use paired with his reluctance to call a debt collection agency for clarification could prevent him from asserting his validation rights at all. *Id.* ¶ 61.

Plaintiff's second cause of action alleges that the collection letter's validation notice is "burie[d] . . . within [the] text" because it is the same font size and color as the surrounding text and several other aspects of the letter divert the consumer's attention away from the notice. Compl. ¶¶ 99–115. The validation notice appears in the second full sentence and paragraph of the collection letter, following only the salutation and one sentence stating the purpose of the letter.[2] Collection Letter 1. According to plaintiff,

---

[1] This address is reiterated on the top left-hand corner of the collection letter's front page. Collection Letter 1. Because it sits above the statement instructing plaintiff to "mail all correspondence and payments to the address listed *below*," it is not addressed in this opinion. *Id.* (emphasis added).

[2] The first paragraph states: "This is to notify you that Discover Bank has retained this firm to collect its claim against you for the balance owing on your Discover Card account." Collection Letter 1.

3

however, several other features of the letter distract from the prominently-placed validation notice, including: 1) a centered box in the middle of the collection letter detailing the amount of debt plaintiff owes, Compl. ¶ 101; 2) check payment information on the bottom of the front page, portions of which are written in capitalized, bolded, italicized, or underlined font, Compl. ¶ 102; and 3) a notification to "**SEE IMPORTANT NOTICE ENCLOSED**" written in bolded, centered font two-thirds of the way down the front page, Compl. ¶ 103. *See* Collection Letter 1. The "important notice" refers to the second page of the collection letter, which includes a series of disclosures required by the New York State Department of Financial Services. *See* Collection Letter 2.

Plaintiff's third cause of action alleges section 1692g and 1692e(10) violations because F&G, a law firm, referred to a lawsuit in the collection letter. Compl. ¶¶ 133, 137, 140–146. The first sentence of the collection letter's third paragraph states, "[a]t this time, no determination has been made as to whether a lawsuit will be commenced." Collection Letter 1. The top-right corner of the first page identifies the sender of the letter, F&G, as "[a] New York Law Firm." *Id.*

## LEGAL STANDARD

### I. The FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To ensure that the statute protects the most vulnerable debtors, courts are to view debt collection

communications "from the perspective of the 'least sophisticated consumer'" ("LSC"). *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993)). The "least sophisticated consumer" (LSC) standard of review examines "how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). However, "in crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness." *Clomon*, 988 F.2d at 1319; *see also Rosa v. Gaynor*, 784 F. Supp. 1, 3 (D.Conn. 1989) ("The FDCPA does not extend to every bizarre or idiosyncratic interpretation by a debtor of a creditor's notice . . . [but] does reach the reasonable interpretation of a notice by even the least sophisticated [consumer]."). The least sophisticated consumer "is neither irrational nor a dolt." *Ellis v. Solomon and Soloman, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (citing *Russell*, 74 F.3d at 34). "[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law." *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) (quoting *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013)).

## II. Validation Notice

### A. Section 1692g

Section 1692g of the FDCPA requires a debt collector to communicate certain information to a debtor when attempting to collect a debt ("validation notice"). 15 U.S.C.

§ 1692g (2006); *Vetrano v. CBE Group, Inc.*, CV 15-3185 (JS) (AKT), 2016 WL 4083384, at *5 (E.D.N.Y. Apr. 1, 2016). The purpose of the validation notice is to protect consumers from "debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid" by "inform[ing consumers that they have] certain rights, including the rights to make a written request for verification of the debt and to dispute the validity of debt." *Lotito v. Recovery Assocs. Inc.*, No. 13–CV–5833 (SJF)(AKT), 2014 WL 4659464, at *3 (E.D.N.Y. Sept. 17, 2014) (citing *Ellis v. Solomon and Soloman, P.C.*, 591 F.3d 130, 134 (2d Cir.2010) (internal quotations omitted) and *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 309 (2d Cir.2003)). Specifically, the validation notice must include:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g; *Vetrano*, 2016 WL 4083384, at *5. Not only must the debt collector convey the information in § 1962g to the debtor; he must also convey it clearly. *Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (citing *Russell*, 74 F.3d at 35). A validation notice is not legally sufficient "if that notice is overshadowed or

6

contradicted by other language in communications to the debtor." *Jacobson*, 516 F.3d at 90 (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)). "A notice overshadows or contradicts the validation notice 'if it would make the least sophisticated consumer uncertain as to her rights.'" *Jacobson*, 516 F.3d at 90 (quoting *Russell*, 74 F.3d at 35); *see also Vertrano*, 2016 WL 4083384, at *5 ("'Even if a debt collector conveys the required information, the collector nonetheless violates the [FDCPA] if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty.'" (quoting *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001))). "Since 2006, this prohibition against 'overshadowing' has also been enshrined in the text of the FDCPA itself: '[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.'" *Belichenko v. Gem Recovery Systems*, 17-CV-01731 (ERK) (ST), 2017 WL 6558499, at *6 (E.D.N.Y. Dec. 22, 2017) (quoting § 1692g(b)).

**B. Sections 1692e and 1692e(10)**

Generally, section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 USC § 1692e (1996); *see Russell,* 74 F.3d at 34; *Belichenko*, 2017 WL 6558499, at *6. "Section 1692e contains sixteen subsections, which 'set forth a non-exhaustive list of practices that fall within this ban.'" *Belichenko*, 2017 WL 6558499, at *6 (quoting *Avila v. Riexinger & Assocs.*, LLC, 817 F.3d 72, 75 (2d Cir. 2016)). One of these subsections, § 1692e(10), is a "catch-all provision" barring "[t]he use of any false representation or

7

deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015) (quoting § 1692e(10)); *see also Belichenko*, 2017 WL 6558499, at *6.

"For the purposes of § 1692e, a 'collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Belichenko*, 2017 WL 6558499, at *6 (quoting *Russell*, 74 F.3d at 35); *see also Clomon*, 988 F.2d at 1319. "The fact that the notice's terminology was vague or uncertain will not prevent it from being held deceptive under § 1692e(10) of the Act." *Russell*, 74 F.3d at 35. "Significantly, courts in this Circuit have held that 'the standard for determining a violation of § 1692e(10) is essentially the same as that for § 1692g.'" *Papetti v. Rawlings Financial Servs., LLC*, 121 F. Supp. 3d 340 (S.D.N.Y. Aug. 5, 2015) (quoting *Foti v. NCO Financial Sys., Inc.*, 424 F. Supp. 2d 643, 666 (S.D.N.Y. 2006)); *see also Tipping-Lipshie v. Riddle*, No. CV 99–4646, 2000 WL 33963916, at *4 (E.D.N.Y. Mar. 2, 2000) (citing *Vera v. Trans-Continental Credit and Collection Corp.*, No. 98 CIV. 1866(DC), 1999 WL 163162, at *3–4 (S.D.N.Y. Mar. 24, 1999) for the proposition that a misleading validation notice violates both sections 1692g and 1692e(10)).

## DISCUSSION

### I. Claim 1: Inclusion of Multiple Addresses on the Collection Letter

Plaintiff contends that F&G's collection letter violates sections 1692g(b), 1692e, and 1692e(10) of the FDCPA because it instructs consumers to address all correspondence, including disputes of the debt, to the "address listed below," after which it identifies two addresses for F&G in Commack, New York—one, a physical address and the other a P.O.

8

Box address. Mem. in Opp. to Def.'s Mot. to Dismiss 9, ECF No. 13-2 ("Pl.'s Br."); Compl. ¶¶ 35–88; Collection Letter 1. Plaintiff urges that the collection letter therefore does not "effectively communicate plaintiff's validation rights[.]" Pl.'s Br. 9; Compl. ¶¶ 35–88. Because I find that the collection letter can only reasonably be interpreted in one way, as directing consumers to mail debt disputes to the P.O. Box address, I conclude that the collection letter's inclusion of two addresses does not violate the FDCPA as a matter of law.

    Read as a whole, the collection letter at issue here directs the consumer to the P.O. Box address as the appropriate destination for all correspondence and payments relating to the debt, including written disputes of the debt's validity. This is clearly shown by the following entries: Approximately halfway down the page, one sentence after a correct recitation of all aspects of the validation notice, the letter contains a directive to "mail all correspondence and payments to the address listed below." Collection Letter 1. Below that statement, the collection letter recites certain information regarding F&G, including its "Office Location" at "60 Motor Parkway • Commack, NY 11725-5710." *Id.* Beneath that entry, on a detachable coupon to be returned in the "enclosed envelope," the letter instructs the consumer to "MAKE CHECK PAYABLE TO: **_FORSTER & GARBUS LLP as attorneys_** AND RETURN COUPON WITH PAYMENT TO PO BOX 9030, Commack, NY 11725-9030 IN[.]" *Id.* On the bottom-right of the detachable coupon, positioned to be visible through the window of a return envelope as a mailing address, the same P.O. Box address is reiterated once more beside a prominent arrow pointing to it for extra emphasis. *Id.* Having been explicitly advised that both correspondence responsive to the validation notice and

9

payment should be sent to the same address, the LSC, "possess[ing] a rudimentary amount of information about the world" and "read[ing the] collection notice with some care," could easily reach the conclusion that the P.O. Box is the proper destination for any written disputes of the debt. *Derosa v. CAC Financial Corp.*, 278 F. Supp. 3d 555, 559 (E.D.N.Y. 2017) (quoting *Clomon*, 988 F.2d at 1318–19).

Unlike in *Carbone v. Caliber Home Loans, Inc.*, 15-CV-4919(JS)(ARL), 2016 WL 8711197, at *3–4 (E.D.N.Y. Sept. 30, 2016), the LSC here is not misdirected by this collection letter to mail disputes to an incorrect address. In *Carbone*, Judge Seybert denied defendants' motion to dismiss plaintiff's section 1692e claim, determining that a collection letter was "materially misleading." *Id.* at *4. In that letter, a sentence in the validation notice itself misdirected the consumer to mail disputes to an "above referenced address" that was for "return service only." *Id.* At the end of the letter, another sentence instructed the consumer to send all written requests to a different address. *Id.* Because the letter implies that "written requests are directed to an address that only handles return mail," "the hypothetical least sophisticated consumer could be confused by the presence of these two addresses." *Id.* This type of overt misdirection is not present in the collection letter in the present case.

In fact, the collection letter here is most similar to the one evaluated by Judge Cogan in *Saraci v. Convergent Outsourcing, Inc.*, because the placement and context of the two addresses make clear to the LSC which address is intended for the receipt of debt disputes. 18-cv-6505 (BMC), 2019 WL 1062098 (E.D.N.Y. Mar. 6, 2019). Granting defendant's motion for summary judgment, Judge Cogan determined that although "[i]t is certainly

possible for the inclusion of multiple addresses on a debt collection letter to be misleading[,]" the collection letter in *Saraci* did not "invite the type of confusion necessary to succeed on such a [§1692e(10)] claim." *Id.* at *1, *3. The letter instructed the debtor to mail disputes to defendant's "office" and listed the same Renton, WA address on the collection letter three times: (1) in the top-right corner below the company's logo and name; (2) directly above a detachable coupon, prefaced by the statement "Pay by Mail[,]"; and (3) below the company's name on the bottom-right of the detachable coupon, in the location designed to be visible through the transparent window of a return envelope. *Id.* at *3; Complaint against Convergent Outsourcing, Ex. 2, ECF No. 1. A different, Oaks, PA address appeared only once on the letter under the header "ATERSO01[.]" *Id.* at *3; Complaint against Convergent Outsourcing, Ex. 2, ECF No. 1. Considering the context and placement of the addresses on the collection letters, Judge Cogan held that the Renton, WA address was "clearly designated" and that it would be "an idiosyncratic reading of the collection letter" to interpret the Oaks, PA address as an option for the receipt of mailed disputes. *Id.*

In the instant case, the P.O. Box address appears twice in nearly identical locations and contexts as the second two instances of the Renton, WA address in *Saraci*. In both cases, the address appears near the top of the detachable coupon preceded by language indicating that it is the proper address for the receipt of debt payments. Similarly, both include the address again on the bottom-right of the detachable coupon, placed so as to be visible through the window of a return envelope. Applying Judge Cogan's reasoning to this case, the LSC is easily able to discern the appropriate address to use for disputing the debt.

11

In support of his position, plaintiff relies heavily on *Pinyuk v. CBE Group, Inc.*, a recent decision in this district that is factually distinguishable from the instant case because the collection letter in that case provided substantially less context as to which address was proper for the receipt of debt disputes. 17-cv-5753 (RRM) (CLP), 2019 WL 1900985 (E.D.N.Y. Apr. 29, 2019); *see* Pl.'s Br. 10–11. In *Pinyuk*, Judge Pollack granted a plaintiff leave to amend his complaint, finding that plaintiff's proposed amendment stated a plausible claim capable of overcoming a 12(b)(6) motion to dismiss. *Pinyuk*, 2019 WL 1900985, at *7. Unlike in the case here, the collection letter in that case included three different addresses, but it afforded no direction to the debtor to mail written disputes to any particular address. *Id.* One P.O. Box address in Waterloo, IA was listed under the validation notice; the same address appeared below it on the top-left of the detachable coupon. Complaint against the CBE Group, Ex. 2, ECF No. 1. A different P.O. Box address, also in Waterloo, IA, appeared on the bottom-right of the detachable coupon, in a location intended to be visible through the window of a return envelope—creating a contradiction between the addresses listed on the detachable coupon. *Id*. Finally, a third Cedar Falls, IA address appeared on the top-left corner of the letter, under the company's name. *Id.* The plaintiff alleged that as a result, the collection letter violated sections 1692g, 1692e, and 1692e(10) of the FDCPA. *Id.* at *1. Judge Pollack determined that it was unclear from the letter to which address a plaintiff should mail a written dispute of the debt. *Pinyuk*, 2019 WL 1900985, at *1. As a result of this confusion, the LSC could choose not to dispute the debt at all—undermining his rights under the FDCPA. *Id.*

Unlike in *Pinyuk*, the location and context of the addresses in the instant case make

clear that the LSC should mail his debt disputes to the P.O. Box address. The LSC is instructed to mail both his correspondence and his payments to the address "listed below." Below that, the P.O. Box address is identified as the destination for payments and is reiterated again on the coupon, highlighted with an arrow. The presence of another address, clearly labeled as an office location, would not confuse the LSC.

Because the LSC could reasonably read the collection letter only to instruct him to submit written disputes to the P.O. Box address, I need not consider whether the defendant would have accepted a written dispute at either the office or P.O. Box address. Therefore, the presence of multiple addresses neither overshadows the validation notice nor renders the letter deceptive or misleading. Adopting all of plaintiff's allegations in the complaint as true, plaintiff's first cause of action contending that the collection letter violated sections 1692g(b), 1692e, and 1692e(10) because it listed multiple addresses is insufficient as a matter of law.

## II. Claim 2: Distraction from the Validation Notice

Plaintiff's second cause of action alleges that F&G's collection letter "affirmative[ly] misdirect[s]" the consumer's attention away from the validation notice in two principal ways: (1) by instructing the consumer to read other legally-mandated disclosures on the letter's second page using bolded, all-capitalized, and offset text; and (2) by deemphasizing the validation notice in comparison to a centered table explaining the amount consumer owes to F&G. Pl.'s Br. 11–12. Although not mentioned in plaintiff's brief, the complaint also contends that: (1) the payment information at the bottom of the letter, parts of which are bolded, italicized, underlined, or capitalized, diverts attention

13

away from the validation notice, Compl. ¶ 102, and (2) the lack of "visually conspicuous transitionary language" preceding the validation notice deemphasizes it in comparison to the rest of the letter, Compl. ¶ 107. Because I find that the validation notice is conspicuously and prominently placed in the second paragraph of the collection letter and is not overshadowed or contradicted by other aspects of the letter, I grant defendant's motion to dismiss plaintiff's second cause of action.

In assessing whether other aspects of a collection letter overshadow or contradict the validation notice, I must evaluate the collection letter in its entirety, reading the various parts of the collection letter in conjunction with each other. *See McStay v. I.C. System, Inc.*, 308 F.3d 188, 191 (2d Cir. 2002) (finding that an LSC would not be confused about his validation rights, which were included on the reverse side of the letter only, when he read the letter in its entirety.); *see also Saraci*, 2019 WL 1062098, at *4 ("When the letter is read in its entirety, there is no ambiguity.").

The Second Circuit has upheld the district court's grant of summary judgment for a debt collector, eliminating plaintiff's section 1692g and 1692e claims, when ambiguities on the front page of a collection letter were clarified by a validation notice on the reverse side. *McStay*, 308 F.3d at 189–192 ("[A]ny confusion created by the ambiguity on the front of the letter dissipates when read in conjunction with the [validation notice] on the back."). Although, as plaintiff argues in his brief, the Second Circuit held that "when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back[,]" this principle does not support plaintiff's position that the LSC would read the

14

back to the exclusion of other notices provided on the front of the letter. *Id.* at 191; *see* Pl.'s Br. 14. Instead, the Second Circuit concluded that the LSC could not reasonably be confused by a collection letter containing a less prominently-placed validation notice on the reverse side, even though the front of the letter was confusing as to the deadline to dispute the debt. *McStay*, 308 F.3d at 191. *McStay*, therefore, undermines plaintiff's position by reinforcing that a consumer must read the entire collection notice—even if the LSC here would be inclined to read the second page first, knowing that it contained an "important notice," he would still be responsible for reading the validation notice in the second paragraph.

Plaintiff's central case in support of this claim, *Papetti*, is distinguishable from the instant action because it hinges on a collection letter's affirmative misdirection of consumers' attention away from the validation notice, a defect that is absent in the collection letter at hand. *See Papetti v. Rawlings Financial Servs., LLC*, 121 F. Supp. 3d 340 (S.D.N.Y. Aug. 5, 2015); Pl.'s Br. 14–15. In *Papetti*, a debt collector's motion to dismiss for failure to state section 1692g and 1692e claims was denied because a collection letter misdirected the consumer to a blank page rather than the validation notice, which was included on another, unaffixed sheet within the envelope. 121 F. Supp. 3d at 346, 349, 354 ("[T]he Court holds that Papetti has stated a claim for a violation of § 1692g because of the combination of multiple shortcomings in RFS's communications, the central one being the errant 'misdirection' in the debt collection letter[.]"). Unlike the collection letter at issue here, the validation notice in *Papetti* was not located on the front page of the collection notice, but on a separate sheet within the same envelope. *Id.* at 345. The front

page notified the consumer that he had two options for resolving the debt, neither of which referenced his right to exercise his validation rights to dispute the debt. *Id.* The bottom of the front page contained a bolded, capitalized message stating: "**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**." *Id.* The reverse side of the letter, however, was blank. *Id.* This "misdirection" was the court's principal qualm with the collection letter—a consumer reading this letter, including the separate sheet containing the validation notice, would not know if he had, in fact, received the "important information" referenced on the first page. *Id.* at 350 ("The consumer, once misdirected to turn to the reverse side of the letter to find 'important information,' cannot be expected to know, with certainty, that the separately enclosed document in fact contains this 'important information.'"). "As the Second Circuit has noted, debt collectors should expect the consumer to follow clear instructions in debt collection letters." *Id.* at 349. As a result, a collection letter's instructions to the consumer, when inaccurate, can justify finding an FDCPA violation.

By contrast, there is no affirmative misdirection in the collection letter here. The validation notice appears in the second paragraph of the front page of the letter. *After* the prominently placed validation notice, the collection letter presents the consumer's "debt due" in a table and, further down the front page, instructs the consumer to "**SEE IMPORTANT NOTICE ENCLOSED**," highlighting that a series of other legally mandated notices appear on the second page of the letter. None of the disclosures on the second page in any way contradict the enumerated validation rights. The collection letter's "clear instructions" do not misdirect the LSC away from his validation notice—rather, the structure of the collection letter encourages the LSC to read the notice first, before directing

16

his attention to the amount of his debt or his other rights. Additionally, the LSC is charged with reading the entire collection letter and interpreting the various statements in conjunction with each other.

Plaintiff cited a series of cases from other circuits in an attempt to argue that the information in the validation notice here is not "clearly and effectively" conveyed. *Weiss v. Zwicker & Assocs., P.C.*, 664 F. Supp. 2d 214, 216 (E.D.N.Y. 2009) (quoting *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)); *see* Pl.'s Br. 13–14. These cases are also readily distinguishable. For example, in *Sharpe v. Midland Credit Management*, the debt collector's motion for judgement on the pleadings was denied when the validation notice was relegated to the fourth paragraph of the reverse side of the letter, and was presented in the same font and size as the surrounding text. 269 F. Supp. 3d 648, 652, 655 (E.D. Pa. 2017). Not only was the validation notice in that case much less prominently placed than here, but also the court found weighty contradictory instructions on the top of the reverse page redirecting the consumer back to the front page. *See id.* at 655–66.

Relatedly, in *Caprio v. Healthcare Revenue Recovery Group, LLC*, the Third Circuit held that a collection letter was "deceptive" when the validation notice was placed on the reverse side of the letter and was contradicted by bolded language improperly implying that the debt could be disputed by telephone. 709 F.3d 142, 151–52, 154 (3d Cir. 2013). No such conditions exist here. Even if the precedent cited by plaintiff were from the Second Circuit, it would still reinforce defendant's argument that the validation notice fulfilled its obligations under the FDCPA.

In support of his claim, plaintiff cites no cases presenting facts analogous to those

in the instant case. Nothing in the collection letter, read as a whole, overshadows or contradicts the validation notice. Nor does the formatting of the letter or inclusion of other "important notices" on the second page render the letter "deceptive." Therefore, I find plaintiff's second claim insufficient as a matter of law and grant defendant's motion to dismiss it.

### III. Claim 3: Collection Letter's Reference to a Lawsuit

Lastly, plaintiff attempts to defeat defendant's motion to dismiss by arguing that a collection letter sent by a law firm and referencing a lawsuit violates sections 1692g, 1692e, and 1692e(10) by creating a false sense of urgency that the debt must be paid immediately, overshadowing the consumer's validation rights. Pl.'s Br. 2, 15–16. Because the collection letter references only the possibility of a lawsuit, stating that, "At this time, no determination has been made as to whether a lawsuit will be commenced[,]" the statement neither overshadows nor contradicts the validation notice, nor does it render the collection letter false, misleading, or deceptive in violation of the FDCPA. *See* Collection Letter 1. Consequently, I grant defendant's motion to dismiss plaintiff's third cause of action.

In *Spira v. Ashwood Financial, Inc.*, the court determined that a collection letter did not overshadow or contradict the validation notice when it "merely advised Plaintiff that in the event that she did not pay the debt or dispute it, Defendant may avail itself of any of its legal options, which included sending more collection letters and instituting legal action." 358 F. Supp. 2d 150, 159–60 (E.D.N.Y. 2005) (granting defendant's motion for summary judgment against plaintiff's section 1692g claim; summary judgment was also granted for defendants against plaintiff's section 1692e(5) and 1692e(10) claims on other

18

grounds.); *see also Belichenko*, 2017 WL 6558499, at *3 (citing *Spira* with approval and finding that a collection letter stating that "we will use any collection activity necessary to collect this debt" did not demand "immediate payment" or "threaten[] adverse consequences" if the debt was not paid within the dispute period. (internal quotations omitted)). In a similar vein, in *Delfonce v. Eltman Law, P.C.*, the court dismissed plaintiff's section 1692g claim, finding that language in a law firm's collection letter referencing the possibility of a lawsuit, but making clear that no lawsuit was commenced, did not overshadow the validation notice—even though it was placed before the validation notice itself. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249, at *1–4 (E.D.N.Y. Feb. 16, 2017) (dismissing plaintiff's claim where the letter stated, "[T]his letter should not be taken as . . . a threat of legal action. However, if you fail to contact this office, our client may consider the availability of additional remedies to recover the balance due."). The language here is analogous to that in *Spira* and *Delfonce*—it references the possibility of a lawsuit in the future, but does not imply that such action would be pursued within the thirty-day dispute period.

Additionally, F&G placed the statement directly after the validation notice. Reading the two portions of the letter in conjunction, it is "entirely clear that the right to seek validation of the debt would trump the commencement or continuation of a lawsuit[.]" *Lerner v. Forster*, 240 F. Supp. 2d 233, 239 (E.D.N.Y. 2003) (quoting *Shapiro v. Riddle & Assocs., P.C.*, 240 F. Supp. 2d 287, 291 (S.D.N.Y. 2003). The plaintiff has pled no facts demonstrating that the collection notice could be "reasonably read to have two or more different meanings, one of which is inaccurate." *Belichenko*, 2017 WL 6558499, at *5

(citing *Russell*, 74 F.3d at 35).

Plaintiff cites a string of cases—several of which pertain to § 1692e(5), a portion of the statute not invoked in this case—in support of the proposition that a consumer receiving a debt collection letter from a law firm rather than a debt collection company will be more sensitive to implied threats of legal action, understanding that "the price of poker has just gone up." Pl.'s Br. 16 (quoting *Herzlinger v. Nichter*, No. 7:09–cv–00192, 2011 WL 1434609, at *6 (S.D.N.Y. Feb. 9, 2011), *on reconsideration in part*, 2011 WL 1408180 (S.D.N.Y. Apr. 5, 2011). Even applying a stricter standard to F&G, as a law firm, the collection letter still passes muster. Rather than implying that F&G may pursue legal action regardless of the consumer's exercise of his validation rights, intimidating the LSC into paying his debt immediately and foregoing his rights, the sentence at issue clarifies that a lawsuit is not imminent. Consequently, I find that the plaintiff failed to state a claim and dismiss the third cause of action.

## CONCLUSION

For the aforementioned reasons, I grant defendant's motion and dismiss plaintiff's claims. The Clerk of Court is directed to enter judgment in favor of defendant and close the case.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated: November 12, 2019
Brooklyn, New York